# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2017-0412, <u>Louis F. Clarizio v. R. David DePuy, Esq. & a.</u>, the court on October 12, 2018, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The plaintiff, Louis F. Clarizio, appeals an order of the Superior Court (<u>Brown</u>, J.), granting summary judgment to the defendants, R. David DePuy, Esq. and McLane, Graf, Raulerson & Middleton, P.A., on the plaintiff's legal malpractice claims. In its order, the trial court ruled that the plaintiff's claims are barred by the three-year statute of limitations. <u>See</u> RSA 508:4, I (2010). Although the defendants filed a cross-appeal, they have not briefed their cross-appeal issues, and, thus, we deem those issues waived. <u>See</u> <u>In re Estate of King</u>, 149 N.H. 226, 230 (2003). We affirm.

The trial court recited, or the record supports, the following facts. DePuy represented the plaintiff at a divorce mediation that took place on July 29, 2008. The mediation began in the morning, but as negotiations continued into the evening, the parties reached an impasse regarding the plaintiff's child support obligation. When it appeared that negotiations were going to end unsuccessfully, DePuy and counsel for the plaintiff's wife discussed a resolution whereby the wife would accept a $1 million property settlement payment and $20,000 per month in child support, on the condition that the plaintiff agree that the latter was "permanent" and that the final agreement contain language describing the payment as part of the overall property settlement, non-modifiable by either party.

DePuy discussed the proposal with the plaintiff, and, after doing so, advised him that he would draft a permanent stipulation resolving the plaintiff's divorce. While DePuy drafted the permanent stipulation, the plaintiff napped. When DePuy had finished drafting the permanent stipulation, he woke the plaintiff and presented it to him. The pertinent provisions in the stipulation stated:

> <u>Child Support</u>. <u>As an overall property settlement</u>, the parties agree that [the plaintiff] shall pay to [his wife] <u>the sum of $20,000.00 per month as child support</u> until [the youngest child] reaches the age of 18 or terminates high school, whichever occurs later. <u>Neither party will seek to modify this amount under any circumstances whatsoever and the child support shall not be increased or</u>

decreased under any circumstances.  Said amount shall be paid on the first day of each month beginning on October 1, 2008.

. . . .

Property Settlement. As a full final and complete property settlement including the parties['] agreement for child support payments [the plaintiff] shall pay to [his wife] the sum of $1,000,000.00 in the following manner.  $500,000 within 30 days of the execution of this agreement, and the remaining $500,000 on or before October 1, 2008.

(Emphases added.)  The plaintiff elected not to read the stipulation before signing it, instead choosing to rely upon DePuy's affirmative responses to the following questions:  "Is it the same that we just agreed to?"  "Same $20,000 in child support?"  "Same property settlement?"

Beginning in December 2008, the plaintiff began inquiring of DePuy whether, if he were to obtain full custody of the children, his child support obligation could be modified.  On February 10, 2010, DePuy sent an opinion letter to the plaintiff, which stated, in pertinent part:

[I]t appears that the child support order is modifiable despite the language stating that it is not modifiable and despite the language stating that it is part of a property settlement.

. . . .

In the Stipulation entered into by you and [your ex-wife] . . . it is specifically provided that you shall pay [your ex-wife] $20,000 per month as child support as part of an overall property settlement until [your youngest child] terminates high school or reaches age 18.  Since property settlements are, generally speaking, not modifiable, such a provision might be viewed as preventing any modification of the child support order until [your youngest child] reaches the age of 18 or terminates high school.

. . . .

[I]f you obtained a substantial change in parenting time, and if you were to pursue modification of the child support order because of that change in custody . . . , there is a substantial risk that [your ex-wife] would then seek to reopen the property settlement division on the basis that she agreed to that division in reliance on the intended permanent nature of the child support payments and that, if the child support is found to be modifiable, then the

2

property settlement should be reconsidered.  There is legal support for such an approach. . . .  Thus, if you were to succeed in obtaining a modification of child support, the court might reconsider the property division.

In July 2011, the plaintiff was awarded primary care and custody of the children, and the children have resided with him ever since.  Although the plaintiff urged DePuy to file a motion to modify his child support, DePuy advised him to wait.  DePuy did not file a motion to modify the plaintiff's child support obligation until February 10, 2012.

On September 27, 2012, because of the ambiguity in the divorce stipulation regarding whether the plaintiff's child support payments were part of the overall property settlement, the circuit court denied his ex parte request to suspend his child support obligation immediately.  Nonetheless, in late 2012, following an evidentiary hearing, the circuit court concluded that the parties intended the monthly payments to be child support and terminated the plaintiff's obligation to make them.  The circuit court ruled, however, that the plaintiff would not be reimbursed for the child support payments he had previously made in light of the undue hardship it would place on his ex-wife.

The plaintiff filed the instant action on January 20, 2015, alleging that DePuy committed legal malpractice by failing to:  (1) obtain his informed consent before drafting the language in the permanent stipulation related to child support; (2) withdraw from representing the plaintiff when it became apparent in December 2009 that the stipulation's language would become an issue in post-divorce litigation; and (3) file a timely motion to modify child support in July 2011, when the plaintiff obtained primary custody and care of his children.  According to his appellate brief, for this allegedly negligent conduct, the plaintiff sought to recover the approximately $200,000 in child support he paid from March 2012 through December 2012 and the $500,000 in attorney's fees that he paid the defendants after December 2009.

Thereafter, the defendants moved for summary judgment, arguing, in pertinent part, that the plaintiff's claims are barred by the three-year statute of limitations.  See RSA 508:4.  The plaintiff asserted that the discovery rule tolled the statute of limitations until September 27, 2012, the date on which his emergency request to suspend his child support obligation was denied.  See id.; see also Lamprey v. Britton Constr., 163 N.H. 252, 257 (2012) (setting forth the discovery rule under which a statute of limitations is tolled until a plaintiff knew or reasonably should have known that he suffered some harm because of the defendant's conduct).  The trial court ruled that the discovery rule did not render the plaintiff's legal malpractice claims timely.  Specifically, the court found that, as of July 2011, the plaintiff knew or should have known of DePuy's alleged negligence and of its causal relationship to his harm.  Thus, the trial court granted summary judgment to the defendants.

When reviewing a trial court's summary judgment ruling, we consider the affidavits and other evidence, and all inferences properly drawn from them, in the light most favorable to the non-moving party. Furbush v. McKittrick, 149 N.H. 426, 429 (2003). Summary judgment may be granted only where no genuine issue of material fact is present and the moving party is entitled to judgment as a matter of law. Id. We review the trial court's application of the law to the facts de novo. Id.

To be timely, a legal malpractice action must be brought within three years of when it arose. See id. at 430; see also RSA 508:4. "A cause of action arises once all the necessary elements are present." Pichowicz v. Watson Ins. Agency, 146 N.H. 166, 167 (2001) (quotation omitted). "A negligence action arises when causal negligence is coupled with harm to the plaintiff." Id. (quotation omitted).

In this case, the alleged negligence was DePuy's failure to: (1) obtain the plaintiff's informed consent before drafting the permanent stipulation's child support provisions; (2) withdraw from representing the plaintiff in December 2009 when it became apparent that the stipulation's language would become an issue in post-divorce litigation; and (3) file a timely motion to modify child support in July 2011, when the plaintiff obtained primary custody and care of his children. Those allegedly negligent acts occurred in July 2008, December 2009, and July 2011, respectively. The plaintiff's legal malpractice lawsuit, filed in January 2015, is, therefore, untimely.

When a suit is initiated more than three years after the act or omission alleged to constitute malpractice, "the plaintiff has the burden of proving that an exception applies to toll the statute of limitations such that his malpractice claim would be timely filed." Furbush, 149 N.H. at 430. One such exception is the discovery rule, which provides:

> when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of.

Id. (quotation omitted); see RSA 508:4, I.

The discovery rule tolls the statute of limitations in a legal malpractice case only until "the plaintiff could reasonably discern that he suffered some harm caused by the defendant's conduct." Furbush, 149 N.H. at 431. The plaintiff need not be certain that the defendant actually acted negligently. See id. Nor need he be certain of the causal connection between his harm and the

4

defendant's conduct; rather, the reasonable possibility that it existed will suffice.  Lamprey, 163 N.H. at 257.  Further, it does not matter that "the plaintiff may not have understood the full extent of the harm that would result" from the defendant's malpractice.  Furbush, 149 N.H. at 431.  Indeed, "the discovery rule is not intended to toll the statute of limitations until the full extent of the plaintiff's injury has manifested itself."  Id.

The trial court ruled that the discovery rule tolled the statute of limitations in this case until July 2011, by which time the plaintiff:  (1) "knew, or should have known, he would . . . be forced to incur the additional legal costs of litigating the modification issue in light of [DePuy's] [allegedly negligent] drafting, all the while continuing to make child support payments to [his ex-wife] in the interim"; (2) "discovered, or should have discovered, [DePuy's alleged] conflict of interest"; and (3) "knew, or should have known, that he would continue making $20,000 payments to [his ex-wife] unless and until a modification occurred."  See Pichowicz, 146 N.H. at 167, 168 (ruling that when the plaintiffs began to incur legal fees for which the insurer did not indemnify them, they knew or should have discovered that there was a possible causal connection between their having to incur such fees and the defendant's alleged negligence in failing to procure proper insurance for them).

On appeal, the plaintiff argues that the trial court erred in finding that he knew of the causal relationship between the alleged negligence and his harm because, by so doing, the trial court improperly drew inferences against him, instead of in his favor, and because:  (1) "[t]here was not one word of testimony from [the plaintiff] that he knew there was a conflict of interest when he got custody of the children in July 2011"; (2) "[n]or did DePuy testify or even assert . . . that he told [the plaintiff] of a conflict of interest when child custody changed"; (3) "[i]f getting temporary custody of the children in July 2011 somehow alerted [the plaintiff] to DePuy's conflict of interest, [the plaintiff] would not have kept him on and paid him tens of thousands of dollars to modify his child support in 2012"; (4) the plaintiff "was never informed of DePuy's malpractice"; (5) "DePuy assured [the plaintiff] in July 2011 he would retroactively recover all future child support payments once [the plaintiff] obtained permanent custody"; (6) "DePuy said nothing in the [February 2010] letter about DePuy having done anything wrong" (emphasis omitted); and (7) "there is a not a single word about [DePuy's alleged conflict of interest] anywhere in the [February 2010] letter."

We are not persuaded.  The plaintiff's arguments may address the issue of whether he subjectively knew of DePuy's alleged legal malpractice and the harm it caused him but fail to demonstrate that, "in the exercise of reasonable diligence," RSA 508:4, he could not have "reasonably discern[ed] that he suffered some harm caused by [DePuy's] conduct," Furbush, 149 N.H. at 431.  Under these circumstances, we conclude that the plaintiff has failed to meet

5

his burden, as the appealing party, of demonstrating that the trial court committed reversible error.  See Gallo v. Traina, 166 N.H. 737, 740 (2014).

Affirmed.

LYNN, C.J., and BASSETT and HANTZ MARCONI, JJ., concurred.

**Eileen Fox,
Clerk**